IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA     :
                                        :
        v.                   :  CRIMINAL ACTION NO.
                                          :  1:09-CR-25-TCB-CCH-4
OSCAR EDUARDO GALVIS-PENA   :
                                          :

## **ORDER FOR SERVICE OF REPORT AND RECOMMENDATION**

Attached is the Report and Recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Criminal Local Rules 12.1(E) and 58.1(A)(3).

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. Failure to file an objection to the Report and Recommendation waives a party's right to review. Fed. R. Crim. P. 59(b)(2).

Pursuant to 18 U.S.C. 3161(h)(1)(D), the above referenced fourteen (14) days allowed for filing objections are **EXCLUDED** from the computation of time under the Speedy Trial Act. At the end of such fourteen-day period, the Clerk is **DIRECTED** to submit this Report and Recommendation to the District Judge.

After the submission of this Report and Recommendation to the District Judge, whether or not any objection has been filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time under the Speedy Trial Act the time, up to thirty (30) days, that this Report and Recommendation is under advisement before the District Court. *Henderson v. United States*, 476 U.S. 321, 331 (1986) (the Speedy Trial Act "exclude[s] all time that is consumed in placing the trial court in a position to dispose of a motion"); *United States v. Mers*, 701 F. 2d 1321, 1337 (11th Cir. 1983) ("[T]he magistrate and the district court have thirty days each during which to take pretrial motions under advisement.").

IT IS SO ORDERED this 6th day of December, 2011.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:09-CR-25-TCB-CCH-4 |
| OSCAR EDUARDO GALVIS-PENA | : | |
| | : | |

## <u>REPORT AND RECOMMENDATION</u>

Defendant Oscar Eduardo Galvis-Pena ("Defendant") is charged in the Indictment, along with seventeen co-defendants, with one count of conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h) (Count 1); one count of conspiracy to willfully aid and abet the distribution of at least five kilograms of a mixture containing cocaine, and other controlled substances, by and through the act of money laundering, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(b)(1)(A)(ii), 841(b)(1)(C), and 846 (Count 2), and multiple counts of money laundering with the intent to promote the unlawful trafficking of controlled substances, in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i) (Counts 15-75).[1] *See* Indictment [1].

---

[1] The Indictment charges the defendants with 144 counts total, including 142 separate counts involving alleged specific incidents of money laundering, but Defendant Galvis-Pena is charged only in Counts 1, 2, and 15-75.

This action is before the Court on Defendant's Motion to Dismiss [308] and Motion to Dismiss Based on Extraterritorial Nature of Alleged Conspiracy and Outrageous Conduct of Government Agents in Directing the Defendant's Actions [317] (collectively the "Motions to Dismiss"). The Government filed a response brief [323] to the Defendant's Motions to Dismiss on November 16, 2011, and Defendant filed a reply brief [331] on November 30, 2011, at which time the Motions to Dismiss were submitted to the undersigned for resolution. Having reviewed the briefs and arguments of the parties, for the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's Motions To Dismiss [308][317] be **DENIED**.

## BACKGROUND FACTS

The Indictment was issued on January 21, 2009, against Defendant and his co-defendants and alleges that the defendants began engaging in a conspiracy to commit acts of money laundering on or before February of 2005 that continued through the date of the Indictment. Indictment [1] at 2. The Indictment further alleges that the defendants engaged in this conspiracy to commit money laundering within the Northern District of Georgia as well as in Colombia, South America; the Dominican Republic; Freeport, Bahamas; Guatemala City, Guatemala; London, England; Mexico

City, Mexico; Miami, Florida; Montego Bay, Jamaica; New York, New York; San Juan, Puerto Rico; Sydney, Australia; Tenerife, Spain, and elsewhere. *Id.* The Indictment alleges that the defendants committed acts of money laundering by depositing proceeds from illegal drug trafficking into bank accounts with financial institutions located in the Northern District of Georgia, or by depositing the proceeds in financial institutions elsewhere and then electronically transferring the funds to financial institutions in the Northern District of Georgia. *Id.* at 4-5. The Indictment also alleges that the defendants engaged in a conspiracy in the Northern District of Georgia and elsewhere to aid and abet the distribution of controlled substances by and through the act of money laundering. *Id.* at 5-6. Specifically, the Indictment charges that Defendant Galvis-Pena committed several acts of money laundering between March 6, 2006, and April 23, 2007, involving the transfer of funds from, or into, financial institutions in the Northern District of Georgia. *Id.* at 9-24.

## DISCUSSION

Defendant has moved to dismiss the Indictment based on the extraterritorial nature of the alleged conspiracy, the lack of any knowledge by the Defendant of any alleged criminal activity in the United States of America, the lack of any contact between the Defendant and the United States of America during the course of the

alleged criminal conduct set forth in the Indictment, and the "outrageous conduct" of the Government and its agents in directing the activities of the Defendant at all times during the course of the alleged conspiracy. Defendant contends that, at all times during the alleged conspiracy, he worked at a money exchange office in Bogota, Colombia, and that he never left Colombia during the course of the alleged conspiracy.[2] Def. Br. [317] at 7. He further contends that he never picked up cash, never deposited cash, and never transferred funds either from the United States to Colombia or from Colombia to the United States at any time during the alleged conspiracy. *Id.*

According to Defendant, at all times during the alleged conspiracy it was agents of the United States Government who picked up the cash, carried the cash to the

---

[2] Although Defendant alleges that he resided in Colombia at all relevant times during the alleged conspiracy and never visited the United States, he does not state in his Motions to Dismiss that he is a citizen of Colombia, nor does he state that he is a non-citizen of the United States. *See* Def. Br. [317] at 7-8. The undersigned will nevertheless assume for the purpose of this discussion that the Defendant is a non-citizen of the United States. If the Defendant were a citizen of the United States, there would be no doubt that the Government could enforce U.S. laws extraterritorially to his conduct that allegedly occurred in Colombia. *See United States v. Frank*, 599 F.3d 1221, 1230 (11th Cir. 2010) ("Jurisdiction [over a citizen] exists under the 'nationality' principle, which allows a country 'to exercise criminal jurisdiction over one of its nationals.'" (*quoting United States v. Plummer*, 221 F.3d 1298, 1307 (11th Cir. 2000)); *see also United States v. Mitchell*, 553 F.2d 996, 1001 (5th Cir. 1977) ("[A] state may punish the wrongful conduct of its citizens no matter where it takes place.").

United States, and deposited the cash in U.S. bank accounts. *Id.* Defendant contends that his sole responsibility was to follow the directions of the cooperating source to distribute the cash to different individuals or different accounts. *Id.* at 8. He argues that the actions of the Government participating in the alleged crimes and in having him arrested in Colombia and extradited to the United States constitute "outrageous government conduct" and extraterritorial enforcement of United States law in a foreign nation in violation of his rights and in violation of international law. As a result, he argues that the charges against him as set forth in the Indictment must be dismissed.

## I.     STANDARD ON A MOTION TO DISMISS INDICTMENT

A defendant challenging the sufficiency of the charges set forth in an indictment cannot succeed by arguing that the Government is unable to *prove* the allegations against him; instead, the allegations contained in the indictment must be taken as true by the court in determining whether the indictment has sufficiently alleged the offense charged. *United States v. Mann*, 517 F.2d 259, 266 (5th Cir. 1975) (*citing United States v. Sampson*, 371 U.S. 75, 78-79 (1962)).[3] "A defendant may not properly

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits." *Mann*, 517 F.2d at 266 (*citing Costello v. United States*, 350 U.S. 359, 363 (1956)).

Accordingly, Defendant's argument that he had only a minor role in the alleged conspiracy, that he was acting solely at the direction of the cooperating source and had no actual responsibility for the transfer of money from Colombia to the United States or from the United States to Colombia, is insufficient to establish that the charges against him must be dismissed. In resolving Defendant's Motions to Dismiss, the Court must take the allegations set forth in the Indictment as true. When this action proceeds to trial, the Defendant will have an opportunity to argue before the jury that the Government has failed to introduce sufficient evidence against him to sustain the charges against him for his alleged participation in the conspiracy.

## II.    EXTRATERRITORIAL APPLICATION OF U.S. LAW

### A.    General Principles of Extraterritorial Application

Defendant argues that the charges against him must be dismissed because the Indictment fails to allege that Defendant committed any acts in the United States in furtherance of the alleged conspiracy. Defendant contends that, at all times during the alleged conspiracy, he resided in Bogota, Colombia, and that he never left Colombia during the period of the alleged conspiracy. He argues that the charges must be dismissed under international law because the Government cannot establish that the statutes he is charged with violating have extraterritorial application to his alleged activities that occurred in Colombia.

International law generally provides that a nation may exercise jurisdiction over criminal activity under one of five principles: (1) the "objective" territorial, (2) the national, (3) the protective, (4) the universal, and (5) the passive personality. *United States v. MacAllister*, 160 F.3d 1304, 1308 n.9 (11th Cir. 1998) (*per curiam*); *see also United States v. Benitez*, 741 F.2d 1312, 1316 (11th Cir.1984); *Rivard v. United States*, 375 F.2d 882, 885 (5th Cir.1967)). A nation's extraterritorial application of its

own criminal laws to activity outside its borders may be justified under any one of these five principles. *MacAllister*, 160 F.3d at 1308 n.9.

Courts have defined the "objective" territorial principle to permit the prohibition not only of acts occurring within the borders of the United States, but also of those activities that occur in other countries but produce detrimental effects within this country. *Id.* at 1308 n.10; *see also United States v. Felix-Gutierrez*, 940 F.2d 1200, 1205-06 (9th Cir. 1991). Thus, it is well established that Congress has the power to apply its laws outside the territory of the United States under certain circumstances. *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1074 ("Both parties concede, as they must, that Congress has the authority to enforce its laws beyond the territorial boundaries of the United States."); *see also Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957); *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 284-285 (1949); *United States v. Noriega*, 746 F. Supp. 1506, 1512-13 (S.D. Fla. 1990) ("the United States has long possessed the ability to attach criminal consequences to acts occurring outside this country which produce effects within the United States . . . . [f]or example, the United States would unquestionably have authority to prosecute a person standing in Canada who fires a bullet across the

border which strikes a second person standing in the United States" (internal citations omitted)).

Nevertheless, the Supreme Court has held that "[i]t is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *Arabian Am. Oil Co.*, 499 U.S. at 248 (*quoting Foley Bros.*, 336 U.S. at 285); *see also United States v. Belfast*, 611 F.3d 783, 811 (11th Cir. 2010). Thus, there is a presumption that U.S. statutes apply only to activities that occur within the borders of the U.S. and its territories, and courts may give extraterritorial effect to a particular statute only when "congressional intent is clear." *MacAllister*, 160 F.3d at 1307; *see also Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 188 (1993) ("Acts of Congress normally do not have extraterritorial application unless such an intent is clearly manifested"); *Belfast*, 611 F.3d at 813 ("we assume that Congress does not intend for a statute to apply extraterritorially unless it evinces that intent clearly"); *United States v. Frank*, 599 F.3d 1221, 1230 (11th Cir. 2010) ("We presume that statutes only apply domestically, and give extraterritorial effect where congressional intent is clear.") (internal quotation marks and citations omitted).

Accordingly, whether Congress has intended extraterritorial application is generally a question of statutory interpretation. *Foley Bros.*, 336 U.S. at 284; *United States v. Bowman*, 260 U.S. 94, 97 (1922); *see also MacAllister*, 160 F.3d at 1307. The Eleventh Circuit has held that, in ascertaining the intent of Congress to impose extraterritorial application of a statute, "the plain meaning of the statute controls our interpretation." *Belfast,* 611 F.3d at 813 ("If the intent of Congress is clear from the face of the statute, we need not look to the legislative history . . . ."); *see also United States v. Maturin*, 499 F.3d 1243, 1246 (11th Cir. 2007); *United States v. Veal*, 153 F.3d 1233, 1245 (11th Cir. 1998).

**B.     The *Bowman* Exception - Extraterritorial Application Inferred**

In *United States v. Bowman*, 260 U.S. 94, 97-98 (1922), the Supreme Court carved out an exception to the general rule and held that, even absent an express intention on the face of the statute that it is to be applied extraterritorially, the intent may be inferred in certain cases:

> Some such offenses can only be committed within the territorial jurisdiction of the government because of the local acts required to constitute them. Others are such that to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as

at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense.

*Bowman*, 260 U.S. at 98.

The Eleventh Circuit has interpreted *Bowman* to hold that extraterritorial application "'may be inferred from the nature of the offense and Congress' other legislative efforts to eliminate the type of crime involved.'" *Frank*, 599 F.3d at 1230 (*quoting United States v. Baker*, 609 F.2d 134, 136 (5th Cir. 1980)); *see also MacAllister*, 160 F.3d at 1307-08 ("*Bowman* established the rule that Congress need not expressly provide for extraterritorial application of a criminal statute if the nature of the offense is such that it may be inferred."). In general, crimes are considered to fall under the *Bowman* exception justifying extraterritorial application "'where the nature of the activities warranted a broad sweep of power.'" *Frank*, 599 F.3d at 1230 (*quoting Baker*, 609 F.2d at 137).

Applying the *Bowman* exception, the Eleventh Circuit has held that extraterritorial application may be inferred with offenses involving drug trafficking or smuggling because the very nature of the crime of drug trafficking involves activity in foreign countries. *See MacAllister*, 160 F.3d at 1308.

> [T]he district court properly concluded that drug smuggling is an offense where extraterritorial application is inferred. "[B]y its very nature [drug smuggling] involves foreign countries, and . . . the accomplishment of the crime always requires some action in a foreign country . . . ." *Brulay v. United States*, 383 F.2d 345, 350 (9th Cir.1967). Logic dictates that Congress would not have passed a drug conspiracy statute that prohibits international drug smuggling activities, while simultaneously undermining the statute by limiting its extraterritorial application. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 839 n.4 (9th Cir. 1994) ("Limiting the jurisdiction of drug smuggling statutes to activities that occur within the United States would severely undermine their scope and effective operation.").

*Id.*

Thus, because of the inherently international scope of drug trafficking or smuggling, this Circuit has consistently held that those types of offenses may fall under the *Bowman* exception justifying the extraterritorial application of U.S. laws prohibiting such activity. *See generally Frank*, 599 F.3d at 1230 n.9 (*citing United States v. Plummer*, 221 F.3d 1298, 1305 (11th Cir. 2000) (statute prohibiting attempts to smuggle goods into the United States); *MacAllister*, 160 F.3d at 1307 (statute prohibiting conspiracy to export cocaine from United States); *Baker*, 609 F.2d at 137-38 (statutes prohibiting possession with intent to distribute and conspiracy to do the same); *United States v. Perez-Herrera*, 610 F.2d 289, 290 (5th Cir. 1980) (statute prohibiting attempts to import controlled substances into the United States)).

Furthermore, when a defendant is charged with being a participant in a conspiracy to violate the criminal laws of the United States, the general rule is that, so long as one of the conspirators commits an overt act in furtherance of that conspiracy within the territory of the United States, all members of the alleged conspiracy are subject to prosecution in the district courts, even if an individual conspirator committed no act within this country. *MacAllister*, 160 F.3d at 1307; *see also Ford v. United States*, 273 U.S. 593, 620 (1927) ("[T]he conspiring was directed to violation of the United States law within the United States, by men within and without it, and everything done was at the procuration and by the agency of each for the other in pursuance of the conspiracy and the intended illegal importation. In such a case all are guilty of the offense of conspiring to violate the United States law whether they are in or out of the country."); *United States v. Inco Bank & Trust Corp.*, 845 F.2d 919, 920 (11th Cir. 1988) ("It is well settled that the government has the power to prosecute every member of a conspiracy that takes place in United States territory, even those conspirators who never entered the United States."); *United States v. Winter*, 509 F.2d 975, 982 (5th Cir. 1975) ("[T]he District Court has jurisdiction over a conspiracy and all those proved to be conspirators if the conspiracy is designed to have criminal effects within the United States and if there is sufficient proof that at least one of the conspirators committed an overt act in furtherance of the

conspiracy within the territorial jurisdiction of the District Court."); *Rivard v. United States*, 375 F.2d 882, 886 (5th Cir. 1967) ("There is thus no doubt that the object of the conspiracy was to violate the narcotics laws of the United States; that the conspiracy was carried on partly in and partly out of this country; and that overt acts were committed within the United States by co-conspirators.").

Despite the consistent rulings in this Circuit that offenses related to international drug trafficking generally fall under the *Bowman* exception justifying the extraterritorial application of U.S. statutes, Defendant Galvis-Pena argues that, because the Supreme Court has not relied on the *Bowman* exception in any majority decision since the 1950s, "the continuing viability of the *Bowman* exception can be debated." Def. Br. [317] at 6. The undersigned disagrees. While the Supreme Court may not have relied on the *Bowman* exception in recent years, as set forth above, the Eleventh Circuit has consistently applied the *Bowman* exception to offenses involving activity in foreign countries that has a detrimental effect in the United States. *See United States v. Belfast*, 611 F.3d 783, 811 (11th Cir. 2010); *United States v. Frank*, 599 F.3d 1221, 1230 (11th Cir. 2010); *United States v. Plummer*, 221 F.3d 1298, 1305 (11th Cir. 2000); *United States v. MacAllister*, 160 F.3d 1304, 1307 (11th Cir. 1998)

(*per curiam*). Defendant has not cited any authority that calls these decisions into question in any way or suggests that they are no longer good law.

Having set forth the general principles supporting the extraterritorial application of U.S. laws, the undersigned now turns to the specific offenses charged against Defendant in the Indictment. Defendant is charged with one count of conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h) (Count 1); one count of conspiracy to willfully aid and abet the distribution of at least five kilograms of a mixture containing cocaine, and other controlled substances, by and through the act of money laundering, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(b)(1)(A)(ii), 841(b)(1)(C), and 846 (Count 2), and multiple counts of money laundering with the intent to promote the unlawful trafficking of controlled substances, in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i) (Counts 15-75).

## C.    Statutory Intent - 18 U.S.C. § 1956

The Defendant is charged in Count 1 and Counts 15-75 with multiple substantive violations of 18 U.S.C. § 1956, which prohibits money laundering with the intent to promote or conceal unlawful activity. That statute, provides in relevant part:

There is extraterritorial jurisdiction over the conduct prohibited by this section if–

(1) the conduct is by a United States citizen or, *in the case of a non-United States citizen, the conduct occurs in part in the United States*; and

(2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

18 U.S.C. § 1956(f) (emphasis added).

Accordingly, the plain language of the statute indicates a clear intent by Congress to apply the statute extraterritorially and the Court need not infer any intent under the *Bowman* exception. In this case, the Defendant is a non-citizen of the United States[4] who alleges that he resided in Bogota, Colombia at all times during the alleged conspiracy and that he never left Colombia. In order for the Government to apply this statute extraterritorially to the Defendant's actions that allegedly took place in Colombia, the Indictment must sufficiently allege that the Defendant's conduct "occurs in part in the United States."

---

[4] As noted above, although Defendant fails to state in his Motions to Dismiss that he is not a citizen of the United States, the undersigned assumes that he is a non-citizen for the purpose of this discussion. *See* note 2, *supra*. Were the Defendant a United States citizen, there would be no doubt that the Government has the authority to prosecute him for extraterritorial activity under the offenses charged in the Indictment.

Courts that have addressed this issue have held that the defendant's physical presence in the United States is not necessary to conclude that a defendant's conduct occurred "in part in the United States" because money laundering generally involves the electronic transfer of funds across national borders. *See United States v. Stein*, Crim. A. No. 93-375, 1994 WL 285020 at *4-5 (E.D. La. June 23, 1994).

> It is plain from both the purpose of section 1956 and its legislative history that Congress did not intend to limit section 1956 so that it would only apply to defendants who are actually present in the United States.
>
> Section 1956 was enacted to combat one of the greatest challenges facing law enforcement today. In light of the modern methods of transporting funds between countries, Congress authorized extraterritorial jurisdiction for violations of the nation's money laundering statute. It is clear that in so doing Congress intended section 1956 to apply to money laundering activities in which the United States has a substantial interest. Thus, the statute requires that part of the offense conduct occur in this country where the defendant is of foreign citizenship. But section 1956 was not intended to only apply when the defendant acts within the borders of this country. Rather it was intended to reach situations in which the transaction occurred in whole or in part in the United States. It is the entire transaction that forms the offense conduct, not merely its initiation or conclusion. If, as it is alleged in this case, *a defendant, who never enters this country, initiates a transfer of funds from a place within the United States to place outside the United States, there will be extraterritorial jurisdiction, because a portion of the conduct occurred in this country.*

*Id.* at *4-5 (internal quotes and citations omitted, emphasis added); *see also United States v. Approximately $25,829,681.80 in Funds*, No. 98 Civ. 2682(LMM), 1999 WL

1080370 at * (S.D.N.Y. Nov. 30, 1999) (relying on *Stein* to hold that a defendant who initiated the transfer of funds between another country and the United States "acted electronically" within the United States, and that action is sufficient to constitute "conduct" for purposes of 18 U.S.C. § 1956).

In this case, the Indictment alleges that the Defendant committed acts of money laundering by depositing proceeds from illegal drug trafficking into bank accounts with financial institutions located in the Northern District of Georgia, or by depositing the proceeds in financial institutions elsewhere and then electronically transferring the funds to financial institutions in the Northern District of Georgia. Indictment at 4-5. Specifically, the Indictment charges that Defendant committed several acts of money laundering between March 6, 2006, and April 23, 2007, involving the transfer of funds from, or into, financial institutions in the Northern District of Georgia. *Id.* at 9-24.

The undersigned finds the reasoning in *Stein* persuasive. Thus, because the Indictment alleges that the Defendant acted "electronically" within the United States by transferring funds into and out of accounts in the United States, the Indictment sufficiently alleges that the Defendant's conduct "occurs in part in the United States" for the purpose of 18 U.S.C. § 1956. Accordingly, the plain language of the statute

indicates an intent by Congress to apply it extraterritorially to the Defendant's conduct in this case.

### D.     Statutory Intent - 21 U.S.C. §§ 841 and 846

In Count 2 of the Indictment, Defendant is charged with substantive violations of 21 U.S.C. §§ 841 and 846, which prohibit drug trafficking. Specifically, 21 U.S.C. § 841 prohibits the distribution, or the possession with the intent to distribute, controlled substances, and 21 U.S.C. § 846 prohibits the attempt or the participation in any conspiracy to commit any offense involving the distribution, or the possession with the intent to distribute, controlled substances.

The Government concedes that neither of the drug trafficking statutes contains any language indicating an express intent by Congress to apply them to extraterritorial conduct. *See* Gov. Br. [323] at 13; *see also United States v. Lopez-Vanegas*, 493 F.3d 1305, 1311 (11th Cir. 2007) ("Neither statute [§ 841 or § 846] expressly requires that possession, distribution nor an act in furtherance of the conspiracy occur in the United States," and "[a] silent statute is presumed to apply only domestically").

Nevertheless, as discussed above, the Eleventh Circuit has held that, because of the inherently international scope of drug trafficking, those offenses may fall under

the *Bowman* exception justifying the extraterritorial application of U.S. laws to conduct occurring in another country under certain circumstances. *See United States v. MacAllister*, 160 F.3d 1304, 1307-09 (11th Cir. 1998) (*per curiam*) ("'[D]rug smuggling is a serious and universally condemned offense,' and therefore, 'no conflict is likely to be created by extraterritorial regulation of drug traffickers.'" (*quoting United States v. Vasquez-Velasco*, 15 F.3d 833, 841 (9th Cir. 1994)); *see also Lopez-Vanegas*, 493 F.3d at 1312 ("Our case law, and that of our sister circuits, has applied § 841(a)(1) and § 846 extraterritorially in certain circumstances, even though Congress has not specifically expressed its intent on the matter.").

In order for Sections 841 and 846 to apply to conduct that occurred outside the United States, however, the Government must establish that there is some nexus between the defendant's conduct and the United States. *Lopez-Vanegas*, 493 F.3d at 1312.

> [I]n each of those cases some other nexus to the United States allowed for extraterritorial application of § 841(a)(1): defendants either possessed or conspired to possess controlled substances within the United States, or intended to distribute controlled substances within the United States. Our predecessor Court made clear in *Baker* that § 841(a)(1) does not apply to possession outside United States territory unless the possessor intends to distribute the contraband within the United States. *Baker*, 609 F.2d at 139; *see Muench*, 694 F.2d at 33 (discussing *Baker* and *Hayes*). Furthermore, there can be no violation of § 846 if the object of the

conspiracy is not a violation of the substantive offense. 21 U.S.C. § 846
("Any person who . . . conspires to commit any offense defined in this
subchapter . . . ."). Accordingly, where, as here, the object of the
conspiracy was to possess controlled substances outside the United
States with the intent to distribute outside the United States, there is no
violation of § 841(a)(1) or § 846.

*Id.* at 1312-13 (*citing United States v. Muench*, 694 F.2d 28, 33 (2d Cir. 1982); *United*

*States v. Hayes*, 653 F.2d 8 (1st Cir. 1981); *United States v. Baker*, 609 F.2d 134, 139

(5th Cir. 1980)).

In the Indictment, the Government charges that Defendant, along with the co-

defendants, "in the Northern District of Georgia and elsewhere," engaged in a

conspiracy to willfully aid and abet the distribution of at least five (5) kilograms of a

mixture containing cocaine, a Schedule II controlled substance, by and through the

"laundering" of proceeds from the sale of cocaine and other controlled substances.

Indictment at 5-6. Accordingly, because the Indictment alleges that the conspiracy to

distribute controlled substances took place "in the Northern District of Georgia and

elsewhere," the undersigned finds that the Government has sufficiently alleged a

nexus between the Defendant's conduct in Colombia and the United States in order

to support the extraterritorial application of 21 U.S.C. §§ 841 and 846. *See Baker*, 609

F.2d at 139 ("In terms of s 841(a)(1), which proscribes the substantive crime of

possession with intent to distribute, we hold that so long as it is clear that the intended distribution would occur within the territorial United States, as in this case, jurisdiction may be maintained . . . ."). *Cf. Lopez-Vanegas*, 493 F.3d at 1312 (no extraterritorial application of 21 U.S.C. §§ 841 and 846 when the evidence at trial established that the defendants conspired to purchase cocaine in Colombia, and ship it from Venezuela to Paris, France, for distribution in Europe, but there was no intent to distribute cocaine in the United States, although the defendants had conversations in Miami, Florida, related to the conspiracy).

Furthermore, as discussed above, when a defendant is charged with being a participant in a conspiracy, even if he committed no act within the United States he is subject to prosecution in this country so long as one of the conspirators commits an overt act in furtherance of that conspiracy within the territory of the United States. *See MacAllister*, 160 F.3d at 1307; *see also United States v. Inco Bank & Trust Corp.*, 845 F.2d 919, 920 (11th Cir. 1988) ("It is well settled that the government has the power to prosecute every member of a conspiracy that takes place in United States territory, even those conspirators who never entered the United States.").

In this case, the Indictment alleges that members of the conspiracy committed acts in the United States that were in furtherance of the conspiracy. Specifically, it

alleges that the defendants committed acts of money laundering by depositing proceeds from illegal drug trafficking into bank accounts with financial institutions located in the Northern District of Georgia, or by depositing the proceeds in financial institutions elsewhere and then electronically transferring the funds to financial institutions in the Northern District of Georgia. Indictment at 4-5. Furthermore, because the undersigned finds that the substantive violation may be applied extraterritorially because the Government has alleged a sufficient nexus to the United States, that finding also extends to the conspiracy charge. *See Baker*, 609 F.2d at 139 ("With jurisdiction maintained over the substantive offense [§ 841], the district court could rightfully exercise jurisdiction over the conspiracy charge [§ 846].").

Accordingly, because the Government alleges in the Indictment that Defendant's conduct had a sufficient nexus to the United States, and that Defendant participated in an alleged conspiracy to aid and abet the distribution of controlled substances that included acts by co-conspirators that occurred in the United States, the undersigned concludes that 21 U.S.C. §§ 841 and 846 apply extraterritorially to the Defendant's alleged conduct in this case.

### E.     Statutory Intent - 18 U.S.C. § 2

Finally, the Defendant is charged with violations of 18 U.S.C. § 2 in connection with the substantive violations charged in Count 2 and Counts 15-75. That statute prohibits the aiding and abetting of any crime, and provides as follows:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.

For the purposes of determining the extraterritorial application of the aiding and abetting statute, courts have held that, if the underlying substantive violation has an extraterritorial reach, it extends to the aiding and abetting charge as well. *See United States v. Noriega*, 746 F. Supp. 1506, 1515-16 (S.D. Fla. 1990).

> With jurisdiction over the substantive violations . . . established, jurisdiction over the conspiracy and aiding and abetting counts likewise follows. Since a conspiracy to commit an offense is closely related to the offense itself, courts have regularly inferred the extraterritorial reach of the [] conspiracy statute on the basis of a finding that the substantive statutes apply abroad. The same must be said for an aiding and abetting charge; if anything, the act of aiding and abetting is even more intimately

24

connected to the underlying crime. In short, the Court perceives no sound jurisdictional reason for distinguishing the conspiracy and aiding and abetting charges from the substantive offense for purposes of extraterritorial application.

*Id.* (internal citations omitted).

Accordingly, because the undersigned has found that the substantive charges in the Indictment may be applied extraterritorially to the Defendant's alleged conduct in this case, the aiding and abetting charge in violation of 18 U.S.C. § 2 also applies to his alleged conduct.

## III.   OUTRAGEOUS CONDUCT OF GOVERNMENT AGENTS

Finally, Defendant argues that the "outrageous conduct" of the Government agents requires dismissal of the charges against him. According to Defendant, he never picked up cash, never deposited cash, and never transferred funds either from the United States to Colombia or from Colombia to the United States at any time during the alleged conspiracy. He contends that, at all times during the alleged conspiracy it was agents of the United States Government who picked up the cash, carried the cash to the United States, and deposited the cash in U.S. bank accounts. He argues that the actions of the Government in having him arrested in Colombia and

extradited to the United States constitute "outrageous government conduct" in violation of his rights and in violation of international law. As a result, he argues that the charges against him as set forth in the Indictment must be dismissed.

The Supreme Court recognized outrageous governmental conduct as a legal defense in *United States v. Russell*, 411 U.S. 423 (1973). In order to establish this defense, a defendant must show that the challenged governmental conduct violated "'that fundamental fairness, shocking to the universal sense of justice,' mandated by the due process clause of the fifth amendment." *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984) (*quoting Russell*, 411 U.S. at 432 (*quoting Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960))); *see also Hampton v. United States*, 425 U.S. 484 (1976); *United States v. Tobias*, 662 F.2d 381 (5th Cir. 1981). The existence of outrageous governmental conduct ""'turns upon the totality of the circumstances with no single factor controlling' and the defense 'can only be invoked in the rarest and most outrageous circumstances.'" *Haimowitz*, 725 F.2d at 1577 (*quoting Tobias*, 662 F.2d at 387); *see also United States v. Michael*, 17 F.3d 1383, 1386 (11th Cir. 1994).

The Eleventh Circuit has held that, "[a]lthough federal courts possess the authority to dismiss an indictment for governmental misconduct, dismissal is an

'extreme sanction which should be infrequently utilized'" and "'[d]ismissal is only favored in the most egregious cases.'" *Michael*, 17 F.3d at 1386 (*quoting United States v. Sims*, 845 F.2d 1564, 1569 (11th Cir. 1988)). Indeed, the Eleventh Circuit has never found that a case should have been dismissed on the ground of outrageous governmental conduct. Samuel, *Eleventh Circuit Handbook* (2011 Ed.), § 87 at 4-7.

In this case, Defendant makes only conclusory allegations that agents of the United States Government committed "outrageous conduct" when they participated in the money laundering conspiracy: picking up the cash, carrying it to the United States, depositing it in U.S. bank accounts, and transferring it to Colombia, and directing Defendant's distribution of the Colombian pesos transferred to him. Further, Defendant alleges outrageous conduct in the Government's extradition of him from Colombia for prosecution in the United States for his alleged role in the conspiracy. As to the latter claim, the Government's right to extradite Defendant to, and charge him in, the United States was lawful for the reasons discussed *supra* in Part II of this Report and Recommendation. As the conduct was lawful it cannot be deemed outrageous conduct that requires dismissal of the charges.

As to the Defendant's claim that he had a minor role and the Government agents directed his activities, as he notes in his Reply Brief, in order to establish a

successful outrageous conduct claim requiring dismissal, a defendant must show that the Government agents "can fairly be said either to have 'creat[ed]' the crime or to have 'coerc[ed]' the defendant's participation in it." Def. Reply Br. [331] at 9 (*quoting United States v. Santana*, 6 F.3d 1, 5 (1st Cir. 1993)). Thus, the fact that Defendant had a minor role in the crime and received his direction from Government agents is irrelevant.

As to the relevant factors, Defendant does not allege, or even suggest, that he was "coerced" in any fashion and he fails to allege that the Government "created" the crime. Instead, his argument is that "[i]if the government did not create this criminal enterprise they [sic] most certainly got involved in it deeply." Def. Reply Br. [331] at 11. By Defendant's own argument, involvement by the Government is not sufficient to constitute outrageous conduct.

Further, it is notable that Defendant has not requested a hearing on his motion. Such a hearing would involve evidence of the entire conspiracy and the Government's role in it, would be indistinguishable from the full trial, and would be a waste of judicial resources. While this Court has not been presented with allegations of Governmental conduct that would shock the conscience and demand dismissal, if the evidence at trial goes beyond that which has been alleged to date, Defendant can move

for dismissal at that time. At this time, however, the undersigned finds that Defendant's allegations fall short of establishing that the Government agents engaged in the type of "shocking" and "egregious" conduct that would be required in order for the Court to dismiss the charges against him on the basis that his fundamental right to due process was denied.

## RECOMMENDATION

For all the above reasons, the undersigned **RECOMMENDS** that Defendant's Motions To Dismiss [308][317] be **DENIED**.

**IT IS SO RECOMMENDED** this 6th day of December, 2011.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE